***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates herein, an employment relationship existed between the plaintiff and the defendant.
3. The defendant is a duly qualified self-insured employer.
4. The plaintiff's average weekly wage will be determined pursuant to Form 22 wage charts provided by the defendant. (A Form 22 was provided for each claim herein.)
5. The parties have stipulated into evidence in this matter the following deposition transcripts, and any exhibits attached thereto: Drs. Kristi Schleder, L. Douglas Milch, James J. Hoski, Stephen M. David, and Mark R. Hedrick, physician assistant William Kraak, and certified vocational expert Randy L. Adams. The parties also stipulated into evidence in this matter stipulated exhibit one, which consists of 172 pages of medical records, and stipulated exhibit two, the plaintiff's answers to interrogatories. The plaintiff introduced and the Deputy Commissioner admitted the following exhibits: (1) the plaintiff's work performance evaluation for 1991-1992; (2) the plaintiff's work performance evaluation for 1990-1991; (3) wage records; (4) evaluation for 1990; (5) the plaintiff's work plan for 1998-1999; (6) forms relating to the plaintiff's left foot problems; and (7) forms relating to the plaintiff's October 1999 injury. The defendant introduced and the Deputy Commissioner admitted into evidence the defendant's exhibit one that consists of the paint crew log.
6. At the hearing before the Deputy Commissioner, the defendant stipulated that the plaintiff sustained an injury by accident arising out of and in the course of his employment on 6 October 1999, but contends that there were no compensable consequences as a result of this injury by accident. The defendant did not file any form or agreement memorializing its admission that an injury by accident occurred. The defendant denied the plaintiff's left foot claim pursuant to a Form 61 that was filed with the Industrial Commission on or about 9 November 1999. The defendant also denied the plaintiff's back claim from 28 April 1999, although no Form 61 was filed with the Commission in that claim.
7. The issues to be determined by the Commission as a result of this hearing include the following: (1) Did the plaintiff sustain an injury by accident to his foot arising out of and in the course of his employment on 15 September 1997, and if so, to what benefits is he entitled? (This claim is the subject of I.C. No. 983955.) (2) Did the plaintiff sustain an injury by accident to his back arising out of and in the course of his employment on 28 April 1999, and if so, to what benefits is he entitled? (This claim is the subject of I.C. No. 014208.) (3) What, if anything, are the compensable consequences of an injury by accident arising out of and in the course of his employment and sustained by the plaintiff on 6 October 1999 to his back? (This claim is the subject of I.C. No. 977407.)
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, the plaintiff was 55 years old. The plaintiff is functionally illiterate, having only completed the sixth grade in school. The plaintiff suffers from preexisting, unrelated medical conditions of diabetes, hypertension, high cholesterol, heart problems, and a speech impediment due to an unrepaired cleft palate that makes communication, including testimony, difficult to understand. The plaintiff has been on service retirement from the State of North Carolina since 1 December 1999, and was not working in any capacity as of the date of the hearing in the matter.
2. The plaintiff was employed by the State for 34 years. The plaintiff has worked in various capacities. In 1997 and thereafter, the plaintiff's job title was "transportation worker."
3. The plaintiff alleges that on 15 September 1997, while at work, a 400-pound barrel rolled over his left foot. However, no incident/accident report was completed for this incident within two years of the incident.
4. The plaintiff has sought regular medical treatment from his family physician, Dr. Schleder, since 1994 for various medical conditions, diabetes and hypertension among them. On 20 September 1997, just five days after the barrel allegedly rolled over the plaintiff's left foot, the plaintiff reported to Dr. Schleder for an examination regarding his medical conditions. Dr. Schleder's notes do not indicate, and she does not have an independent recollection, that the plaintiff reported to Dr. Schleder that he had suffered an injury to his left foot at work five days earlier. Several days later, on 26 September 1997, the plaintiff underwent a stress test. While the plaintiff had to stop the stress test early due to fatigue, there is no mention in the report that the plaintiff also complained of foot pain.
5. The plaintiff first reported on 9 June 1999, almost two years later, to Dr. Schleder that he hurt his left foot, although Dr. Schleder has some recollection that he had complained occasionally of foot pain relating to his work boots. Dr. Schleder referred the plaintiff to Dr. Milch, a podiatrist, who examined the plaintiff on 14 June 1999 for complaints of left foot pain that had come on gradually and was of "several months duration."
6. The plaintiff was treated by Dr. Milch and was also seen later in a second opinion evaluation by Dr. Hedrick. Neither physician found evidence of old fractures in the plaintiff's left foot. Both physicians have expressed the opinion, found and accepted herein as credible, that the plaintiff's left foot problems beginning in early to mid-1999 are not related to any trauma, but instead are due to the normal aging process as well as to structural aspects of the plaintiff's foot.
7. Prior to the injuries giving rise to the claims herein, the plaintiff had suffered occasional back pain. The plaintiff injured his back approximately 40 years ago when he fell off scaffolding at work, and again about 15 years ago when he lifted an engine out of a car. The plaintiff also suffered a back injury when he was involved in a motor vehicle accident in 1997. Despite these injuries, however, the plaintiff was able to and did continue working on a regular basis.
8. On 28 April 1999 the plaintiff contends he sustained an injury by accident to his back. According to the Form 18 filed by the plaintiff, he suffered a back injury after "moving 50 [pound] bags . . . into the hopper." The medical evidence corroborates that the plaintiff developed back pain after lifting and moving either bags or barrels. On 5 May 1999, the plaintiff reported to Dr. Schleder that over the past month he had developed back pain after his job changed and he had to haul, repetitively, 50-pound bags.
9. At the hearing and after the plaintiff was seen by Dr. David for a second opinion evaluation on 18 October 2000, the plaintiff contended that his back pain from 28 April 1999 occurred after he fell out of a truck and onto a barrel. The contention that the plaintiff fell onto a barrel is not accepted as credible given the other more contemporaneous evidence that indicates that the plaintiff's back pain developed after lifting bags or barrels or both.
10. After the plaintiff's back pain developed on 28 April 1999, he did not miss significant time from work, but he did seek medical treatment from Dr. Schleder, who assigned lifting restrictions and ultimately referred him to Dr. Hoski. The plaintiff had an M.R.I. that revealed degenerative changes and facet arthropathy and underwent a course of physical therapy. The results of a functional capacity evaluation in September 1999 led to the assignment of permanent lifting restrictions.
11. According to the incident investigation report dated 11 October 1999, the plaintiff sustained an injury by accident on 6 October 1999 when, while loading empty paint barrels onto a truck, he lifted a barrel and turned to place it on the truck. The plaintiff thereafter requested from Dr. Schleder an out-of-work note for October 7th and 8th, a request that Dr. Schleder declined to grant, as she had not yet spoken with Dr. Hoski regarding the plaintiff's ability to work. For medical treatment, the plaintiff reported to Sisters of Mercy Urgent Care on 12 October 1999 with complaints of back pain following the lifting and twisting incident.
12. After the injury by accident on 6 October 1999, the plaintiff's diagnoses of degenerative disc disease and facet arthropathy did not change; surgery was not warranted in the plaintiff's case at the time. In addition, the restrictions imposed as a result of the functional capacity evaluation remained in effect. The plaintiff has been permanently restricted to light to medium duty work, with rare to occasional lifting of 30-40 pounds.
13. The plaintiff's vocational situation is extraordinarily difficult. Plaintiff scored in the lowest 1 percentile on a verbal communication test given during his vocational assessment. Furthermore, plaintiff has difficulty spelling his own name and cannot speak understandably due to an unrepaired cleft pallet.
14. After the injury by accident on 6 October 1999, the plaintiff's back pain increased to the extent that he was unable to continue working in his job with the defendant. The plaintiff last worked for the defendant on 21 October 1999. Thereafter, the plaintiff took sick and vacation leave time until he retired on service retirement from the State on 1 December 1999.
15. The plaintiff was sent to Dr. David for a second opinion evaluation regarding his lumbar spine pain. The plaintiff saw Dr. David twice, on 18 October 2000 and again on 1 November 2000. Dr. David ordered another M.R.I. and additional x-rays. These tests confirmed that there was no need for surgical intervention. Dr. David diagnosed an exacerbation of previous degenerative changes in the plaintiff's spine, and assigned a three percent permanent partial impairment rating to the plaintiff's spine.
16. The plaintiff's preexisting, previously nondisabling degenerative changes in his spine were materially exacerbated by the injury by accident on 6 October 1999.
17. As a result of the material aggravation on 6 October 1999 of his preexisting, previously nondisabling back condition, the plaintiff is unable to return to work in his preinjury job with the defendant. Furthermore, due to the material aggravation on 6 October 1999 of his preexisting, previously nondisabling back condition, and taking into account the plaintiff's age, education, previous employment history of only manual labor work, his lack of transferable skills, and his other medical conditions, the plaintiff is unable to return to work in any capacity in the competitive labor market.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 6 October 1999, the plaintiff's average weekly wage for the preceding 52 weeks was $506.87. This yields a compensation rate of $337.93. N.C. Gen. Stat. § 97-2(5).
2. The plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment to his left foot on 15 September 1997, the claim that is the subject of I.C. No. 983955. N.C. Gen. Stat. § 97-2(6). Even assuming arguendo that the plaintiff did sustain a compensable injury by accident to his left foot, there were no compensable consequences as a result thereof, as the plaintiff's foot problems beginning in 1999 were not causally related to a trauma but to the aging process and the mechanics of his foot, among others.
3. The plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment to his back on 28 April 1999, the claim which is the subject of I.C. No. 014208, as he was doing his job of moving bags into the hopper in his normal and customary manner, and there was no interruption of his normal work routine. This does not constitute a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
4. The plaintiff sustained a compensable injury by accident to his back as a result of a specific traumatic incident on 6 October 1999 when he lifted an empty paint barrel, and turned and twisted to put it on a truck. N.C. Gen. Stat. § 97-2(6). This injury by accident exacerbated the plaintiff's preexisting, underlying, previously nondisabling back condition and caused the plaintiff to have disabling back pain.
5. The material aggravation of the plaintiff's preexisting, previously nondisabling back condition rendered the plaintiff unable to continue working in his job with the defendant. N.C. Gen. Stat. §§97-2(9) and 97-29.
6. The plaintiff has been totally disabled due to the material aggravation of his preexisting condition since 22 October 1999. N.C. Gen. Stat. § 97-29.
7. As a result of the material aggravation on 6 October 1999 of his preexisting, previously nondisabling back condition, the plaintiff is unable to return to work in his preinjury job with the defendant. Furthermore, due to the material aggravation on 6 October 1999 of his preexisting, previously nondisabling back condition, and taking into account the plaintiff's age, education, previous employment history of only manual labor work, his lack of transferable skills, and his other medical conditions, the plaintiff is unable to return to work in any capacity in the competitive labor market.
8. The plaintiff has retained a three percent permanent partial impairment to his back as a result of the material aggravation of his preexisting condition. N.C. Gen. Stat. § 97-31(23).
9. The plaintiff's medical treatment with Dr. Schleder and Dr. David relating to the material aggravation of his back condition on 6 October 1999 has been reasonably necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§97-2 (19) and 97-25.
10. The plaintiff's retirement does not effect his ability to collect worker's compensation benefits. Troutman v. White and Simpson, Inc.121 N.C. App. 48 (1995).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee approved below, the defendant shall pay the plaintiff permanent total disability compensation at the weekly rate of $337.93 from 22 October 1999 through the present and continuing for the remainder of the plaintiff's lifetime unless or until the plaintiff sustains a change of condition or the Commission otherwise orders. Said compensation that has accrued shall be paid in a lump sum.
2. The plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation awarded to the plaintiff herein. Accordingly, of the lump sum owed the plaintiff, the defendant shall deduct one-fourth and shall forward this amount directly to the plaintiff's counsel. Of the ongoing compensation, the plaintiff's counsel is entitled to every fourth compensation check.
3. The defendant shall provide to the plaintiff all reasonable and necessary medical treatment relating only to the injury and exacerbation of his preexisting back condition that occurred on 6 October 1999.
4. The defendant shall bear the cost of this proceeding.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER